### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

FELICIA DANCE, on behalf of
herself and those similarly situated,

      Plaintiff,                               Case No. 1:19-cv-02860-SDG

vs.

FIRST DATA CORPORATION, a Foreign
Profit Corporation, STAR SYSTEMS, INC.
d/b/a STAR NETWORKS, INC., a Foreign
Corporation, and MONEY NETWORK
FINANCIAL, LLC, a Foreign Corporation,

      Defendants.

---

## JOINT MOTION FOR ORDER APPROVING SETTLEMENT OF COLLECTIVE ACTION

Plaintiff, Felicia Dance (**Named Plaintiff**), and Defendants, First Data Corporation (**First Data**), Star Networks, Inc. (**Star Networks**), and Money Network Financial, LLC (**Money Network**) (collectively, **Defendants**) (together with Plaintiff, the **Parties**), by and through their undersigned counsel, respectfully move this Court for issuance of an Order approving the terms of the settlement reached in this matter, approving Court-facilitated notice, and dismissing this case with prejudice, while retaining jurisdiction to enforce the terms of the Parties' settlement. In support of their joint motion, the Parties state as follows:

## I.      PRELIMINARY STATEMENT

Named Plaintiff brought this lawsuit against Defendants, claiming that she and other account managers were improperly classified by Defendants as exempt and seeking overtime compensation at a rate of time and one-half their regular rate of pay for all hours worked over 40 hours per workweek under the Fair Labor Standards Act, 29 U.S.C. § 216(b) (**FLSA**), which authorizes an employee to bring an action on behalf of herself and others similarly situated.  Defendants deny Named Plaintiff's allegations and maintain they did not violate the FLSA.  After over one year of negotiating the terms of a settlement, the Parties have reached agreement on a settlement of the claims in this lawsuit (**Settlement**).

Court approval is warranted where a settlement resolves a *bona fide* dispute between parties "with respect to coverage [and] amount due under the [FLSA]," the resolution is fair and reasonable, and the resolution is the product of serious, informed, arms-length negotiations.  *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353, n.8 (11th Cir. 1982).  Based upon the expertise and experience of Named Plaintiff's counsel, the Settlement is fair, just, and adequate to settle the claims of Named Plaintiff and the putative collective members (together, **Plaintiffs**).  While Named Plaintiff believes the allegations asserted in the action have merit and are supported by the information developed to date, she and Named Plaintiff's counsel recognize the expense and delay which would be incurred as the

result of the proceedings necessary to prosecute the action against Defendants through trial and appeal.  In reaching the Settlement, Named Plaintiff and her counsel considered the uncertain outcome and risk of any litigation.

The Settlement confers substantial benefits upon Plaintiffs.  Its terms represent a successful resolution of the claims given that a trier of fact might conclude that Plaintiffs are not entitled to any relief or to relief in an amount less than the amount agreed to in the Settlement.  Additionally, Plaintiffs faced defenses that the claims could not proceed collectively, that Plaintiffs are not entitled to compensation because they are exempt from the overtime provisions of the FLSA, and that First Data and Star Networks cannot be held liable as they did not employ Named Plaintiff during the relevant period.  Accordingly, the Parties request that this Court approve the Settlement.

## II.   **FACTUAL BACKGROUND**

In early 2019, Named Plaintiff contacted Morgan & Morgan, P.A., to investigate her claims for unpaid overtime pursuant to the FLSA.  Named Plaintiff retained Morgan & Morgan, P.A. (**Plaintiffs' Counsel**), to assert claims on behalf of Plaintiffs for unpaid overtime compensation pursuant to the FLSA.  On June 21, 2019, after investigating Named Plaintiff's claims, Plaintiffs' Counsel filed the Collective Action Complaint and Demand for Jury Trial against First Data.  On July 25, 2019, Plaintiff's Counsel filed an Amended Complaint, adding Star

Networks and Money Network as defendants.  On August 15, 2019, Defendants filed their Answer and Defenses to Plaintiff's Amended Collective Action Complaint and Demand for Jury Trial, denying any of the Defendants violated the FLSA.

Defendants contend that on October 2, 2017, Named Plaintiff began working for Money Network as a Senior Client Service Analyst.  Named Plaintiff was employed by Money Network in that position through the end of her employment. As a Senior Client Service Analyst, Defendants contend Named Plaintiff's primary duty was the performance of office work directly related to the general business operations of Money Network and that she exercised discretion and independent judgment regarding matters of significance related to client accounts.  As such, Defendants assert that Named Plaintiff was properly classified as exempt pursuant to the FLSA administrative exemption, and hence, was not entitled to overtime compensation pursuant to the FLSA.  Even if Named Plaintiff were non-exempt, however, Defendants posit Named Plaintiff did not work more than 40 hours in a workweek.  Further, First Data and Star Networks dispute that they employed Named Plaintiff from October 2017 to the present as alleged in the Amended Complaint.

Starting in or around September 2019 and the throughout the subsequent one (1) year period, the Parties exchanged information, which included, but was not

limited to, Defendants' production of data relating to: (a) the number of Senior Client Service Analysts employed during the relevant period; (b) the rates of pay of the Senior Client Service Analysts; and (c) the number of weeks the Senior Client Service Analysts were employed, providing Plaintiff's Counsel the opportunity to create a damages model and facilitate settlement discussions. Plaintiffs' Counsel used this information to formulate a settlement demand to defense counsel on behalf of Plaintiffs. The Parties engaged in settlement negotiations and have reached a resolution on behalf of Plaintiffs, which, if approved, will resolve the wage-related claims of the putative collective members who timely opt-in to the Settlement pursuant to Section 216(b) of the FLSA.

The Settlement achieved provides for a $165,500.00 payment for the benefit of Named Plaintiff and twelve (12) similarly situated Senior Client Service Analysts employed by Money Network or Star Networks between June 21, 2017 and the date of the Settlement Agreement. The Parties agree that the terms of the Settlement are fair, adequate and reasonable. In light of the disputed issues of fact, the disputed liability issues, and uncertainty as to whether the collective would be certified, whether Named Plaintiff would be able to establish her claims at trial, and the risks of delay, including possible appeals, settlement is warranted.

### III.   SUMMARY OF SETTLEMENT TERMS

The Parties agree for the purposes of the Settlement that Plaintiffs are similarly situated and agree to Court-facilitated notice to "all Senior Client Service Analysts who were employed by Money Network or Star Networks at any time between June 21, 2017, and the date of the Settlement Agreement."  The settlement funds will be distributed as follows:

- Monetary settlement amounts will be paid to Plaintiffs who timely submit the appropriate claim forms and releases of wage claims within the liability period, pursuant to an agreed upon formula, which is set forth in the Parties' Settlement Agreement.

- The expenses of a third-party settlement claims administrator will be paid to the administrator for administering the Settlement including providing notice to the putative collective members, disbursing settlement proceeds, processing claims, providing tax notifications, and establishing a qualified settlement fund.

- Plaintiffs' Counsel's attorneys' fees will be paid in an amount not to exceed $50,250.00, which is approximately 30.4% of the gross settlement amount of $165,500.00.

IV.   **MEMORANDUM OF LAW**

To have an enforceable release of FLSA claims in this Circuit, the Court must review and approve agreements settling alleged violations of the FLSA.  *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 702–14 (1945); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982) (holding claims for back wages arising under the FLSA may be settled or compromised only with approval of the Secretary of Labor or the court).  "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness."  *Lynn's Food Stores, Inc.*, 679 F.2d at 1353.  Accordingly, the Parties are submitting a copy of the Settlement Agreement for the Court's review and approval.  *See* Exhibit 1.  A proposed Order entering the stipulated judgment approving the Agreement is attached hereto as Exhibit 2.

A. **Approval of Payment to Named Plaintiff and Members of the FLSA Collective.**

To approve a settlement of overtime claims proposed by an employer and an employee, a court must determine that the settlement is a "fair and reasonable [resolution] of a bona fide dispute" of the claims raised pursuant to the FLSA.  *Lynn's Food Stores, Inc.*, 679 F.2d at 1355.  There is a strong presumption in favor of finding a settlement fair.  *See Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994) (noting that the Eleventh Circuit Court of Appeals

"favor[s] and encourage[s] settlements in order to conserve judicial resources.")
The Eleventh Circuit has detailed the circumstances that justify court approval of an FLSA settlement in a litigation context as follows:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's Food Stores, Inc.*, 679 F.2d at 1354. In determining whether the settlement is reasonable, courts may consider the following factors:

> (1) the existence of fraud or collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of Plaintiffs' success on the merits[;]
> (5) the range of possible recovery; and
> (6) the opinions of the counsel.

*Prieto v. Scheeler's Cafe de Marco, Inc.*, No. 2:16-cv-139-FtM-99CM, 2017 U.S. Dist. LEXIS 10937, at *3 (M.D. Fla. Jan. 9, 2017) (citing *Dorismond v. Wyndham Vacation Ownership, Inc.*, 2014 U.S. Dist. LEXIS 85750 (M.D. Fla. June 24,

2014)); *Leverso v. SouthTrust Bank of Ala., Nat'l Ass'n*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994); *Garcia v. Riccy's Landscaping Servs., Inc.*, 2009 WL 347418, at *2 (M.D. Fla. Feb. 11, 2009); *Hitchcock v. Orange Cty., Fla.*, 2006 WL 3614925, at *3 (M.D. Fla. Dec. 11, 2006).  As set forth below, examination of each of these factors shows that the terms of the Parties' Settlement are fair, adequate, and reasonable, and should be approved by the Court.

### 1.  <u>There was no fraud or collusion behind the settlement.</u>

Named Plaintiff and Defendants in this lawsuit have disagreed on almost all facts pertinent to this lawsuit.  Indeed, the Parties initial dispute in this matter began with whether First Data ever employed the Named Plaintiff (which Defendants deny) and resulted in Named Plaintiff filing an Amended Complaint adding both Star Networks and Money Network as named defendants.  Defendants maintain that only Money Network employed Named Plaintiff during the relevant period.  Defendants also deny any liability under the FLSA and deny that Plaintiffs are entitled to any recovery in this lawsuit; however, without admitting liability and solely for the purposes of avoiding ongoing costs of litigation, Defendants agreed to work with Named Plaintiff to reach a settlement.

To that end, Defendants' counsel produced to Plaintiffs' Counsel data relating to:  (a) the number of Senior Client Service Analysts employed during the relevant period; (b) the rates of pay of the Senior Client Service Analysts; and (c)

the number of weeks the Senior Client Service Analysts were employed, to create a damages model and facilitate settlement discussions.   In addition, Defendants produced to Plaintiffs' Counsel computer generated log-in information for Named Plaintiff for the period of approximately November 2018 through March 2019.  Defendants used that information to assess the approximate number of hours that Named Plaintiff worked each week.  The computer-generated spreadsheet supports that Named Plaintiff rarely worked more than 40 hours in a week, and typically worked fewer than 40 hours.

The Parties' information exchange allowed the Parties to focus on the issues in dispute, including:  (a) whether Senior Client Service Analysts were properly classified as exempt; (b) potential obstacles to collective certification; (c) how many hours Plaintiffs would be able to show they worked over 40 in a workweek; (d) willfulness; and (e) liquidated damages.  The Parties engaged in extensive and continued settlement negotiations before ultimately reaching agreement on the terms of the Settlement.  Thus, the Settlement in this case is the ultimate result of arms-length negotiations by the Parties, who were well represented by counsel and made aware of potential outcomes.   Under the terms of the Settlement (if approved), the 13 putative collective members would receive a pro-rata share of the total gross amount of $165,500, less attorney's fees and administrative costs.

The Parties calculated the amount of each Plaintiff's distribution from the $165,500 settlement fund based on proportionate allocations of each Plaintiff's actual weeks worked during the relevant period.  The eligible time frame for this case is June 21, 2017 through the date of the Parties' Settlement Agreement.  In exchange for these settlement payments, Plaintiffs will provide Defendants with a tailored release covering wage and hour claims only that arose during the period at issue in the case. *See* Exhibit 1, Settlement Agreement § IV.  All the above establishes that this Settlement was reached by arms-length negotiations without collusion by or on behalf of any of the Parties.

## 2. Further litigation of this action would be complex, expensive, and likely would continue for years.

The Settlement allows Plaintiffs to take a substantial recovery now, without suffering the delay and risk of litigating the claims.  In this case, further litigation, including significant discovery of putative collective members regarding the hours they worked, such as written discovery and depositions, along with significant summary judgment briefing on the disputed legal issues in the case, such as whether each Senior Client Service Analyst was properly classified as exempt, willfulness and liquidated damages, and appeals, could drag on for years and require the expenditure of tremendous resources.  Fees and costs in this case would only have continued to increase for both sides if the case had not settled.

**3. <u>The Parties have completed relevant discovery,
providing them the opportunity to fully evaluate the
claims.</u>**

This factor considers whether the parties have had the opportunity to fully
evaluate the claims. *Carnegie v. Mut. Sav. Life Ins. Co.*, Civil Action No. CV-99-
S-3292-NE, 2004 U.S. Dist. LEXIS 29404, at *72 (N.D. Ala. Nov. 23, 2004)
(finding that the "stage of the proceedings" factor weighed in favor of approving
the settlement where "the parties had sufficient opportunity to evaluate the
strengths and weaknesses of the case").

In this case, the Parties exchanged relevant information to assist the Parties
in calculating damages, including data relating to: (a) the number of Senior Client
Service Analysts employed during the relevant period; (b) the rates of pay of the
Senior Client Service Analysts; (c) the number of weeks the Senior Client Service
Analysts were employed; and (d) an analysis of the hours worked by Named
Plaintiff. The Parties also discussed their views on why Senior Client Service
Analysts were (or were not) properly classified as exempt under the administrative
exemption. As a result of these efforts, the Parties had enough information upon
which to assess the potential merits of the claims, ultimate liability, and the
apparent risks of proceeding to trial.

**4. <u>Plaintiffs face significant obstacles to prevailing on the merits of the claims and collective recovery is uncertain.</u>**

Defendants have asserted that neither Named Plaintiff nor any of the Plaintiffs are entitled to unpaid overtime compensation because:  (a) they were properly classified as exempt under the FLSA; and (b) even if they were not properly classified, Senior Client Service Analysts rarely worked more than 40 hours in a workweek.  Moreover, Defendants deny that either First Data or Star Networks employed Named Plaintiff during the relevant period, thus neither of these entities could be liable under the FLSA for any allegedly unpaid wages claimed by Named Plaintiff in this lawsuit.

The Parties further dispute whether Defendants willfully violated the FLSA and whether Defendants could prove, if found liable, that they acted in good faith belief that their actions did not violate the FLSA.  *See* 29 U.S.C. § 260.  Further, Defendants contest that there are employees similarly situated to Named Plaintiff, particularly given that whether each employee was properly classified as exempt and how many, if any, hours each employee worked over 40 in a workweek are highly individualized questions of fact.  Accordingly, disputes exist as to the whether some of the Defendants can be liable at all in this action, whether Named Plaintiff was entitled to any overtime, whether there are similarly situated employees, and the amount of overtime worked and the calculation of overtime damages.  Even if Plaintiffs could show that they should have been classified as

non-exempt and that they worked overtime hours, the Parties dispute whether the overtime compensation should be calculated at half-rate because Plaintiffs' salaries were meant to compensate them for all hours worked. The Parties therefore disagree on both the likelihood of Plaintiffs' success on the merits and the potential recovery should Plaintiffs succeed.

**5. The settlement falls at a point in the range of possible recovery that is fair to Plaintiffs.**

"[T]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

As summarized above, the Parties dispute the amount of potential damages Plaintiffs may be entitled to, even if they were to prevail here. Defendants contend that Plaintiffs worked little, if any, overtime hours and thus their damages are *de minimis*. Moreover, Defendants contend that any damages Plaintiffs may be awarded should be calculated utilizing a so-called "half-time" formula, drastically reducing the amount of any potential damages. Under Defendants' calculation methodology, assuming *arguendo* that Plaintiffs proved liability, Plaintiffs' collective recovery would be limited to one (1) hour of overtime per Plaintiff calculated at half-rate for each workweek that Plaintiff actually worked overtime during the two (2) year statutory period. Defendants contend Plaintiffs worked so

little overtime, according to Defendants' calculations, Plaintiffs' collective recovery would equal approximately $12,920.05.

For their part, Plaintiffs claimed they worked approximately 10 hours of overtime each week, and that their damages should be calculated utilizing a time and one-half methodology. Accounting for a time and one half calculation, liquidated damages, and a three (rather than the default two) year statute of limitations Plaintiffs contend their potential best day in Court could yield damages nearing one million dollars.

The settlement payments to Plaintiffs of $165,500.00 provides a reasonable compromise of individually-calculated overtime damages, given the wide disparity in the Parties' respective damages models. Indeed, after subtracting attorneys' fees, the net settlement amount may still compensate Plaintiffs for approximately 9 hours of overtime, calculated at half-rate, for each workweek worked during a two-year period.

## 6. <u>Each of the Parties' counsel is of the opinion that the Settlement is fair.</u>

Based on what the Parties learned through informal discovery, from witness interviews, and from extensive research and investigation, the Parties negotiated a fair settlement for Plaintiffs. By settling, Plaintiffs avoid: the risks of not establishing liability at trial; challenges to certification; significant reductions of potential damages; substantial and indefinite delay in payment involved in having

to wait for trial and any appeals; and potential adverse determinations on the liability and damages issues outlined above.  Counsel for both Parties therefore recommend acceptance of the Settlement and represent herein that the Settlement is fair, beneficial, and equitably allocated among the settling Plaintiffs.

## B. <u>Approval of Payment of Attorneys' Fees.</u>[1]

The Parties' Settlement Agreement provides that Defendants will pay Plaintiffs' attorneys' fees and costs in the amount approved by the Court up to a maximum of $50,250.00. *See* Ex. 1, Settlement Agreement, § III(E)(1).  The FLSA requires that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  Fee awards are mandatory for prevailing plaintiffs in FLSA cases.  *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985).  The Supreme Court has held that a party is a "prevailing party" for purposes of an attorneys' fee award if the party "succeeded on any significant claim affording it some of the relief sought." *Texas State Teachers' Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989).  In the instant action, Plaintiffs stand to recover a payment for overtime hours disputed by Defendants.  Thus, Plaintiffs are entitled to payment of their attorneys' fees and costs in this action by Defendants in the amount stated in the Settlement Agreement.

---

[1] While Defendants do not oppose Plaintiffs' request for approval of payment of attorney's fees, Defendants do not join in the request.

The total requested attorneys' fees and costs is $50,250. The requested fees and costs represent approximately 30.4% of the total gross settlement amount of $165,500.00. Plaintiffs' counsel took this case on a contingency basis, which provides for the payment of attorneys' fees in the amount of forty (40%) percent of any settlement, and Plaintiffs' counsel has agreed to the substantially lower percentage of approximately 30.4%. Because of this contingency fee arrangement, Plaintiffs' Counsel has not received payment for any of their time litigating the case, nor have they received reimbursement for their out-of-pocket costs expended. Plaintiffs' Counsel undertook the financial risk of potentially unsuccessful litigation to recover overtime pay for workers they believe were not paid for all hours worked.

The attorneys' fees paid to plaintiffs' counsel in FLSA and other wage class action settlements are typically paid through an award of a percentage of the gross settlement fund recovered for the class. *See Stahl v. MasTec, Inc.*, 2008 U.S. Dist. LEXIS 120887 (M.D. Fla. May 20, 2008); *Pinto v. Princess Cruise Lines, LTD.*, 513 F. Supp. 2d 1334 (S.D. Fla. 2007). Courts routinely approve similar contingency agreements in the amount of one-third of the total settlement amount, and it would be fair and reasonable to do so here as well. *See e.g.*, *Wreyford v. Citizens for Transp. Mobility, Inc.*, 2014 WL 11860700, at *1 (N.D. Ga. Oct. 16, 2014) (approving a one-third fee); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4

(S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (adopting the percentage approach in an FLSA settlement and finding that the agreed upon 39% covering fees and costs was reasonable as a matter of law); *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 997 (N.D. Ind. 2010) (collecting cases and finding that attorney's fees equivalent to 33.3% of the total settlement amount is reasonable in an FLSA action); *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1064–65 (D. Minn. 2010) (collecting cases and granting award of 33%). Viewed under a percentage of the settlement fund analysis, therefore, Plaintiffs' fee request is reasonable.

Moreover, the efficient resolution of this case, without the necessity for prolonged litigation, was a direct result of Plaintiffs' Counsel's experience in handling complex litigation and extensive knowledge of wage and hour law. *See, e.g., Norman v. The Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1300 (11th Cir. 1988) (noting that "from the beginning and throughout the case, expertise in negotiations and tactics often advances a client's cause more quickly and effectively than the sustained and methodical trench warfare of the classical litigation model").

Lead counsel for Plaintiffs has more than twenty (20) years of wage-and-

hour experience, has litigated many class and collective wage-and-hour actions in numerous courts across the country, and has regularly acted as lead counsel on FLSA collective actions in the Northern District of Georgia.  This FLSA collective action exists because Plaintiffs' Counsel has diligently pursued relief on behalf of the FLSA collective since discovery that Named Plaintiff and others may have a claim, including hours of reviewing and analyzing time and pay data as well as research regarding the collective claims and potential defenses to same.

Lastly, Plaintiffs note that the Settlement Agreement imposes substantial post-approval work on Plaintiffs' Counsel.  Specifically, Plaintiffs' Counsel is responsible for explaining the Settlement to Plaintiffs, counseling them regarding their rights in the Settlement, and securing acceptances from Plaintiffs during the 60-day notice time frame.  *See* Ex. 1.  Accordingly, if the Court is inclined to scrutinize Plaintiffs' attorneys' fees for the purpose of reducing the claimed fee amount, Plaintiffs respectfully request that the Court reserve such analysis for after settlement administration, at which point Plaintiffs' Counsel could, if the Court wishes, submit contemporaneous time entries with additional briefing.

## C. Notice of Opportunity to Participate in Settlement.

To facilitate this Settlement, the Parties respectfully request that this Court permit the mailing of the proposed Notice of Settlement to the putative collective members, informing them of their opportunity to participate by filing a completed

Consent and Release Form.  *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 168-69 (1989).  The notice procedures provided under Section 216(b) permit potential plaintiffs to participate in a settlement by filing a completed Consent to Join form, while providing that those who do not elect to do so will not be bound by the settlement, and that is the procedure that is set forth in the Parties' Settlement.  Accordingly, the Parties request this Court to permit notice be sent to the putative collective members.

## CONCLUSION

For the reasons set forth above and for good cause shown, the Parties respectfully request that this Court enter the proposed Order approving the Settlement, approving Plaintiffs' Counsel's request for attorneys' fees, costs, and expenses, and authorizing notice to putative collective members of this Settlement Agreement of their opportunity to participate in the Settlement, dismissing the case with prejudice, and retaining jurisdiction to enforce the Settlement.

Respectfully submitted this 4th day of March 2021.

s/Andrew R. Frisch                          s/Jenna Rinehart Rassif
Andrew R. Frisch                            Justin R. Barnes
Georgia Bar No. 366105                      Georgia Bar No. 105220
Morgan & Morgan, P.A.                        Jackson Lewis P.C.
8151 Peters Road, Suite 4000                171 17th St., Suite 1200
Plantation, FL 33324                        Atlanta, GA 30363
Phone: 954-WORKERS                          Phone:  (404) 525-8200
Facsimile: 954-327-3013                     barnesjr@jacksonlewis.com
afrisch@forthepeople.com
                                            Jenna Rinehart Rassif (FBN 56855)
**Attorney for Plaintiff**                  Admitted *Pro Hac Vice*
                                            Valerie L. Hooker (FBN 113688)
                                            Admitted *Pro Hac Vice*
                                            Jackson Lewis P.C.
                                             2 South Biscayne Boulevard, Suite 3500
                                            Miami, FL 33131
                                            Phone: (305) 577-7600
                                            jenna.rassif@jacksonlewis.com
                                            valerie.hooker@jacksonlewis.com
                                            **Attorneys for Defendants**


## <u>CERTIFICATION</u>

In accordance with Civil Local Rules 5.1C and 7.1D, I hereby certify that this document has been prepared in 14 point, Times New Roman font.

/s/ Valerie L. Hooker
Valerie L. Hooker
Admitted *Pro Hac Vice*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| FELICIA DANCE, on behalf of herself and those similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>FIRST DATA CORPORATION, a Foreign Profit Corporation, STAR SYSTEMS, INC., d/b/a STAR NETWORKS, INC., a Foreign Corporation, and MONEY NETWORK FINANCIAL, LLC, a Foreign Corporation,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   CIVIL ACTION NO.:<br>  1:19-cv-02860-JPB |

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2021, I electronically filed the foregoing

**JOINT MOTION FOR ORDER APPROVING SETTLEMENT OF**

**COLLECTIVE ACTION** with the Clerk of Court using the CM/ECF system,

which will automatically serve

22

the following counsel of record for Plaintiff:

> Andrew R. Frisch, Esq.
> E-mail: AFrisch@forthepeple.com
> MORGAN & MORGAN, P.A.
> 8151 Peters Road, Suite 4000
> Plantation, FL  33324
> Telephone: (954) Workers
> Facsimile: (954) 327-3013
> *Attorneys for Plaintiff Felicia Dance*

> /s/ Valerie L. Hooker
> Valerie L. Hooker
> Admitted *Pro Hac Vice*

4829-0366-4863, v. 1