# EXHIBIT 1

# COLLECTIVE ACTION SETTLEMENT AGREEMENT AND RELEASE

This Collective Action Settlement Agreement and Release ("Agreement") is entered into between Felicia Dance ("Named Plaintiff") on behalf of herself and all others similarly situated, and First Data Corporation ("First Data"), Star Networks, Inc. ("Star Networks"), and Money Network Financial, LLC ("Money Network") (collectively, "Defendants").

Defendants and Named Plaintiff (collectively, the "Settling Parties") agree to take all steps reasonably necessary and appropriate to obtain approval of this Agreement in consideration for: (a) payment by Defendants of the consideration expressed in this Agreement subject to the terms, conditions, and limitations of this Agreement; (b) Named Plaintiff's release and dismissal with prejudice, as set forth in this Agreement; and (c) other valuable monetary and non-monetary consideration, as set forth in this Agreement.

This Agreement is contingent upon approval by the Court and is entered into voluntarily by the Settling Parties for settlement purposes only.

## I. CONSENT TO COURT-FACILITATED NOTICE

**A.** For settlement purposes only, the Settling Parties agree that the Named Plaintiff and the "Potential Opt-in Plaintiffs" (as defined below) are similarly situated for purposes of 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") and consent to Court-facilitated notice to the Named Plaintiff and Potential Opt-in Plaintiffs. The Potential Opt-in Plaintiffs will include only those individuals who worked for Money Network or Star Networks as Senior Client Service Analysts at any time between June 21, 2017, and the date of this Agreement. Named Plaintiff is identified by name and Employee Identification Number on Exhibit A. The Potential Opt-In Plaintiffs are identified by Employee Identification Number on Exhibit B. Defendants do not waive, and instead expressly reserve, the right to challenge conditional or final certification, as if this Agreement had not been entered into by the Settling Parties, in the event the Court does not approve the settlement.

**B.** The Settling Parties will cooperate and present to the Court for its consideration in connection with the approval of the Agreement and Court-facilitated notice such information as may be reasonably requested by the Court for approving FLSA settlements and facilitated notice.

## II. SETTLEMENT APPROVAL PROCEDURE

Within 14 days[1] after the execution of this Agreement, the Settling Parties will file in the case styled *Felicia Dance, on behalf of herself and those similarly situated v. First Data Corporation, et al.,* Case No. 1:19-cv-02860-SDG pending in the United States District Court for

---

[1] All time periods provided by this Agreement are stated in calendar days, not business days.

*JP*

Defendants        Dance

## COLLECTIVE ACTION SETTLEMENT AGREEMENT AND RELEASE

This Collective Action Settlement Agreement and Release ("Agreement") is entered into between Felicia Dance ("Named Plaintiff") on behalf of herself and all others similarly situated, and First Data Corporation ("First Data"), Star Networks, Inc. ("Star Networks"), and Money Network Financial, LLC ("Money Network") (collectively, "Defendants").

Defendants and Named Plaintiff (collectively, the "Settling Parties") agree to take all steps reasonably necessary and appropriate to obtain approval of this Agreement in consideration for: (a) payment by Defendants of the consideration expressed in this Agreement subject to the terms, conditions, and limitations of this Agreement; (b) Named Plaintiff's release and dismissal with prejudice, as set forth in this Agreement; and (c) other valuable monetary and non-monetary consideration, as set forth in this Agreement.

This Agreement is contingent upon approval by the Court and is entered into voluntarily by the Settling Parties for settlement purposes only.

## I.   CONSENT TO COURT-FACILITATED NOTICE

**A.**   For settlement purposes only, the Settling Parties agree that the Named Plaintiff and the "Potential Opt-in Plaintiffs" (as defined below) are similarly situated for purposes of 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") and consent to Court-facilitated notice to the Named Plaintiff and Potential Opt-in Plaintiffs. The Potential Opt-in Plaintiffs will include only those individuals who worked for Money Network or Star Networks as Senior Client Service Analysts at any time between June 21, 2017, and the date of this Agreement. Named Plaintiff is identified by name and Employee Identification Number on Exhibit A. The Potential Opt-In Plaintiffs are identified by Employee Identification Number on Exhibit B. Defendants do not waive, and instead expressly reserve, the right to challenge conditional or final certification, as if this Agreement had not been entered into by the Settling Parties, in the event the Court does not approve the settlement.

**B.**   The Settling Parties will cooperate and present to the Court for its consideration in connection with the approval of the Agreement and Court-facilitated notice such information as may be reasonably requested by the Court for approving FLSA settlements and facilitated notice.

## II.   SETTLEMENT APPROVAL PROCEDURE

Within 14 days[1] after the execution of this Agreement, the Settling Parties will file in the case styled *Felicia Dance, on behalf of herself and those similarly situated v. First Data Corporation, et al.,* Case No. 1:19-cv-02860-SDG pending in the United States District Court for

---

[1] All time periods provided by this Agreement are stated in calendar days, not business days.

the Northern District of Georgia (the "Litigation"), an agreed-to Joint Motion for Order Approving Settlement of Collective Action ("Joint Motion"), along with this Agreement, an agreed-to (proposed) Order ("Approval Order"), and a proposed Notice of Settlement, Consent to Join and Release Form, and Settlement Share Form (collectively, the "Notice Packet"), attached to this Agreement as Exhibit C, which will advise Named Plaintiff and each Potential Opt-In Plaintiff of the material terms and provisions of this settlement, including their estimated settlement share, the procedure for submitting their Consent to Join and Release Forms, and their rights with respect to this settlement. Each Settlement Share Form will provide each Potential Opt-in Plaintiff with an estimated amount, calculated by the Settlement Claims Administrator, of the *pro rata* share of the "Revised Settlement Fund" (as defined below), before applicable federal, state and local payroll taxes or other withholdings, allocable to the Named Plaintiff and each of the Potential Opt-in Plaintiffs in proportion to the share allocated to each such individual from the total amount added together from Exhibits A and B. Only Potential Opt-in Plaintiffs who become Qualified Claimants will be entitled to receive their *pro rata* share of the Revised Settlement Fund (each Qualified Claimant's *pro rata* share, the "Settlement Award"). The Notice Packet must be sent out substantially in the form attached as Exhibit C, subject to Court approval.

## III.   MODE, CALCULATION, AND TIMING OF PAYMENT OF CLAIMS

### A.   Notices of Settlement and Consents to Join

**1.** Within 14 days after the Court's approval of this Agreement, Defendants will provide the Settlement Claims Administrator with the names, employee identification numbers, last known mailing addresses, and Social Security numbers of the Potential Opt-In Plaintiffs, as such information exists on file with any of the Defendants. All information provided regarding the Potential Opt-in Plaintiffs will be treated by Plaintiff's Counsel and the Settlement Claims Administrator as confidential, and the Settlement Claims Administrator will not communicate to Plaintiff's Counsel any personally-identifying information (such as names or addresses) regarding any Potential Opt-In Plaintiff who has not yet opted into the settlement. Prior to the mailing of the Notice Packet to the Potential Opt-In Plaintiffs, the Settlement Claims Administrator will make commercially-reasonable efforts to find accurate addresses through the United States Post Office's National Change of Address database and will mail the Notice Packet to any updated address obtained from the database.

**2.** Within 14 days after receipt of the information described above, the Settlement Claims Administrator will mail, in one mailing by U.S. Mail, all Notice Packets to the Potential Opt-In Plaintiffs. Potential Opt-In Plaintiffs must submit their completed Consent to Join and Release Forms, by mail, e-mail, or facsimile, to the Settlement Claims Administrator on or before 60 days after the mailing of the Notice Packet (the "Claim Bar Date"). If any Notice Packet is returned as undeliverable before the Claim Bar Date, the Claims Administrator will promptly attempt to locate such Potential Opt-In Plaintiff through an electronic search using the Social Security number and/or former address of that person and will promptly mail an additional



Defendants                                                                                                      Dance

the Northern District of Georgia (the "Litigation"), an agreed-to Joint Motion for Order Approving Settlement of Collective Action ("Joint Motion"), along with this Agreement, an agreed-to (proposed) Order ("Approval Order"), and a proposed Notice of Settlement, Consent to Join and Release Form, and Settlement Share Form (collectively, the "Notice Packet"), attached to this Agreement as Exhibit C, which will advise Named Plaintiff and each Potential Opt-In Plaintiff of the material terms and provisions of this settlement, including their estimated settlement share, the procedure for submitting their Consent to Join and Release Forms, and their rights with respect to this settlement. Each Settlement Share Form will provide each Potential Opt-in Plaintiff with an estimated amount, calculated by the Settlement Claims Administrator, of the *pro rata* share of the "Revised Settlement Fund" (as defined below), before applicable federal, state and local payroll taxes or other withholdings, allocable to the Named Plaintiff and each of the Potential Opt-In Plaintiffs in proportion to the share allocated to each such individual from the total amount added together from Exhibits A and B. Only Potential Opt-in Plaintiffs who become Qualified Claimants will be entitled to receive their *pro rata* share of the Revised Settlement Fund (each Qualified Claimant's *pro rata* share, the "Settlement Award"). The Notice Packet must be sent out substantially in the form attached as Exhibit C, subject to Court approval.

## III.   MODE, CALCULATION, AND TIMING OF PAYMENT OF CLAIMS

### A.   Notices of Settlement and Consents to Join

      **1.**    Within 14 days after the Court's approval of this Agreement, Defendants will provide the Settlement Claims Administrator with the names, employee identification numbers, last known mailing addresses, and Social Security numbers of the Potential Opt-In Plaintiffs, as such information exists on file with any of the Defendants. All information provided regarding the Potential Opt-in Plaintiffs will be treated by Plaintiff's Counsel and the Settlement Claims Administrator as confidential, and the Settlement Claims Administrator will not communicate to Plaintiff's Counsel any personally-identifying information (such as names or addresses) regarding any Potential Opt-In Plaintiff who has not yet opted into the settlement. Prior to the mailing of the Notice Packet to the Potential Opt-In Plaintiffs, the Settlement Claims Administrator will make commercially-reasonable efforts to find accurate addresses through the United States Post Office's National Change of Address database and will mail the Notice Packet to any updated address obtained from the database.

      **2.**    Within 14 days after receipt of the information described above, the Settlement Claims Administrator will mail, in one mailing by U.S. Mail, all Notice Packets to the Potential Opt-In Plaintiffs. Potential Opt-In Plaintiffs must submit their completed Consent to Join and Release Forms, by mail, e-mail, or facsimile, to the Settlement Claims Administrator on or before 60 days after the mailing of the Notice Packet (the "Claim Bar Date"). If any Notice Packet is returned as undeliverable before the Claim Bar Date, the Claims Administrator will promptly attempt to locate such Potential Opt-In Plaintiff through an electronic search using the Social Security number and/or former address of that person and will promptly mail an additional

Notice Packet to such person if an updated address is found; however, the deadline for returning the completed Consent to Join and Release Form shall remain the Claim Bar Date.

   **3.** In the event that Plaintiff's Counsel or the Settlement Claims Administrator is contacted by a Potential Opt-In Plaintiff before the Claim Bar Date, and the Potential Opt-In Plaintiff indicates that he or she did not receive the Notice Packet, the Settlement Claims Administrator will mail an additional Notice Packet to the address provided by the Potential Opt-In Plaintiff; however, the deadline for returning the completed Consent to Join and Release Form shall remain the Claim Bar Date.

   **4.** In the event any Consent to Join and Release Forms are submitted timely but do not contain signatures or sufficient information to identify the Potential Opt-In Plaintiff, the Settlement Claims Administrator will provide the Potential Opt-In Plaintiff with a letter requesting the information that was not provided (the "Cure Letter") and giving the Potential Opt-In Plaintiff 15 days to respond. Any Potential Opt-In Plaintiff who fails to respond timely to a Cure Letter will not be considered a Qualified Claimant (as defined below).

   **5.** Only the Named Plaintiff and those Potential Opt-In Plaintiffs who timely return properly completed (or cured) Consent to Join and Release Forms will be considered "Qualified Claimants" entitled to receive a Settlement Award.

   **6.** In the event of a dispute over late submission of any Consent to Join and Release Form, the Settling Parties will meet and confer in good faith in an effort to resolve the dispute. If the Settling Parties are unable to reach an agreement, the Settlement Claims Administrator will decide the dispute, and its decision will be final.

   **7.** Within 10 days after the Claim Bar Date (the "Notification Date"), the Settlement Claims Administrator will provide to Defendants' Counsel and Plaintiff's Counsel: (a) unredacted copies of all timely returned Consent to Join and Release Forms; and (b) redacted copies of all timely-received Consent to Join and Release Forms suitable for filing with the Court – i.e., removing addresses and other personally-identifying information.

   **8.** Within 7 days after receipt of the redacted Consent to Join and Release Forms from the Settlement Claims Administrator, Plaintiff's Counsel will file the redacted Consent to Join and Release Forms with the Court.

   **9.** At the conclusion of the settlement administration process, the Settlement Claims Administrator will provide the original Consent to Join and Release Forms to Defendants' Counsel.



Defendants

_____
Dance

Notice Packet to such person if an updated address is found; however, the deadline for returning the completed Consent to Join and Release Form shall remain the Claim Bar Date.

      **3.**     In the event that Plaintiff's Counsel or the Settlement Claims Administrator is contacted by a Potential Opt-In Plaintiff before the Claim Bar Date, and the Potential Opt-In Plaintiff indicates that he or she did not receive the Notice Packet, the Settlement Claims Administrator will mail an additional Notice Packet to the address provided by the Potential Opt-In Plaintiff; however, the deadline for returning the completed Consent to Join and Release Form shall remain the Claim Bar Date.

      **4.**     In the event any Consent to Join and Release Forms are submitted timely but do not contain signatures or sufficient information to identify the Potential Opt-In Plaintiff, the Settlement Claims Administrator will provide the Potential Opt-In Plaintiff with a letter requesting the information that was not provided (the "Cure Letter") and giving the Potential Opt-In Plaintiff 15 days to respond. Any Potential Opt-In Plaintiff who fails to respond timely to a Cure Letter will not be considered a Qualified Claimant (as defined below).

      **5.**     Only the Named Plaintiff and those Potential Opt-In Plaintiffs who timely return properly completed (or cured) Consent to Join and Release Forms will be considered "Qualified Claimants" entitled to receive a Settlement Award.

      **6.**     In the event of a dispute over late submission of any Consent to Join and Release Form, the Settling Parties will meet and confer in good faith in an effort to resolve the dispute. If the Settling Parties are unable to reach an agreement, the Settlement Claims Administrator will decide the dispute, and its decision will be final.

      **7.**     Within 10 days after the Claim Bar Date (the "Notification Date"), the Settlement Claims Administrator will provide to Defendants' Counsel and Plaintiff's Counsel: (a) unredacted copies of all timely returned Consent to Join and Release Forms; and (b) redacted copies of all timely-received Consent to Join and Release Forms suitable for filing with the Court – i.e., removing addresses and other personally-identifying information.

      **8.**     Within 7 days after receipt of the redacted Consent to Join and Release Forms from the Settlement Claims Administrator, Plaintiff's Counsel will file the redacted Consent to Join and Release Forms with the Court.

      **9.**     At the conclusion of the settlement administration process, the Settlement Claims Administrator will provide the original Consent to Join and Release Forms to Defendants' Counsel.



Dance

Defendants

## B.   Defendants' Obligations

**1.**   Gross Settlement Fund.  In consideration for the dismissal with prejudice of the Litigation, as well as the release of claims effected by this Agreement and other good and valuable consideration, Defendants will pay a gross maximum of $165,500.00 (the "Gross Settlement Fund") to settle the Litigation.  Subject to the terms of this Agreement, the Gross Settlement Fund includes payment for:  (1) the Settlement Award to Named Plaintiff and all Potential Opt-In Plaintiffs who become Qualified Claimants, or their respective authorized legal representatives; (2) all attorneys' fees, costs, and litigation expenses approved by the Court, including those in connection with securing Court approval of this Agreement, the claims process, and implementing this Agreement; (3) all costs of and expenses incurred by the Settlement Claims Administrator, as described in Section III.C.3 and D.3.4.; and (4) applicable federal, state and local taxes or other withholdings required to be withheld, remitted, or paid by Defendants, provided however, the Gross Settlement Fund does not include Defendants' share of any payroll taxes associated with any portions of the Settlement Awards designated as wages under IRS Form W-2 unless Defendants make a supplemental payment to the Gross Settlement Fund in an amount equal to such taxes (the "Supplemental Tax Payment").  Except for Defendants' share of any payroll taxes associated with any portions of the Settlement Awards designated as wages under IRS Form W-2, the Gross Settlement Fund will be all that Defendants or Released Parties (as defined below) will pay to settle the Litigation and assumes Named Plaintiff and all of the Potential Opt-In Plaintiffs make valid and timely claims and become Qualified Claimants.  The Gross Settlement Fund is exclusive of any interest or investment income accrued, which accrued interest/income will be returned to Defendants.

**2.**   Revised Settlement Fund.  All attorneys' fees, costs, and litigation expenses approved by the Court, including those in connection with securing Court approval of this Agreement, the claims administration process, and implementing this Agreement, including as described in Section III.D.3.,4., and all costs of and expenses incurred by the Settlement Claims Administrator, including as described in Section III.C.3., (together, the "Gross Settlement Fund Fees and Expenses") will be deducted from the Gross Settlement Fund to obtain the amount of the Revised Settlement Fund.

**3.**   Payment to Qualified Settlement Fund.  On the Notification Date, the Settlement Claims Administrator will provide to Defendants' Counsel and Plaintiff's Counsel the Settlement Award payable to each Qualified Claimant, as calculated by the Settlement Claims Administrator (subject to Defendants' approval) and delineating the tax withholding amounts and employer payroll tax amounts applicable to for each Settlement Award.  Within 20 days after the Notification Date, Defendants will pay to the Qualified Settlement Fund a gross amount equal to the Gross Settlement Fund Fees and Expenses plus the Settlement Awards.  Defendants may also make the Supplemental Tax Payment.  Defendants are only obligated to pay an amount equal to the Gross Settlement Fund Fees and Expenses plus the Settlement Awards.  Any amount of the Revised Settlement Fund above the Gross Settlement Fund Fees and Expenses and the Settlement Awards shall remain in Defendants' possession.



Defendants                                                                                                    Dance

### B.    Defendants' Obligations

**1.** _Gross Settlement Fund._  In consideration for the dismissal with prejudice of the Litigation, as well as the release of claims effected by this Agreement and other good and valuable consideration, Defendants will pay a gross maximum of $165,500.00 (the "Gross Settlement Fund") to settle the Litigation.  Subject to the terms of this Agreement, the Gross Settlement Fund includes payment for:  (1) the Settlement Award to Named Plaintiff and all Potential Opt-In Plaintiffs who become Qualified Claimants, or their respective authorized legal representatives; (2) all attorneys' fees, costs, and litigation expenses approved by the Court, including those in connection with securing Court approval of this Agreement, the claims process, and implementing this Agreement; (3) all costs of and expenses incurred by the Settlement Claims Administrator, as described in Section III.C.3 and D.3.4.; and (4) applicable federal, state and local taxes or other withholdings required to be withheld, remitted, or paid by Defendants, provided however, the Gross Settlement Fund does not include Defendants' share of any payroll taxes associated with any portions of the Settlement Awards designated as wages under IRS Form W-2 unless Defendants make a supplemental payment to the Gross Settlement Fund in an amount equal to such taxes (the "Supplemental Tax Payment").  Except for Defendants' share of any payroll taxes associated with any portions of the Settlement Awards designated as wages under IRS Form W-2, the Gross Settlement Fund will be all that Defendants or Released Parties (as defined below) will pay to settle the Litigation and assumes Named Plaintiff and all of the Potential Opt-in Plaintiffs make valid and timely claims and become Qualified Claimants.  The Gross Settlement Fund is exclusive of any interest or investment income accrued, which accrued interest/income will be returned to Defendants.

**2.** _Revised Settlement Fund._  All attorneys' fees, costs, and litigation expenses approved by the Court, including those in connection with securing Court approval of this Agreement, the claims administration process, and implementing this Agreement, including as described in Section III.D.3.,4., and all costs of and expenses incurred by the Settlement Claims Administrator, including as described in Section III.C.3., (together, the "Gross Settlement Fund Fees and Expenses") will be deducted from the Gross Settlement Fund to obtain the amount of the Revised Settlement Fund.

**3.** _Payment to Qualified Settlement Fund._  On the Notification Date, the Settlement Claims Administrator will provide to Defendants' Counsel and Plaintiff's Counsel the Settlement Award payable to each Qualified Claimant, as calculated by the Settlement Claims Administrator (subject to Defendants' approval) and delineating the tax withholding amounts and employer payroll tax amounts applicable to each Settlement Award.  Within 20 days after the Notification Date, Defendants will pay to the Qualified Settlement Fund a gross amount equal to the Gross Settlement Fund Fees and Expenses plus the Settlement Awards.  Defendants may also make the Supplemental Tax Payment.  Defendants are only obligated to pay an amount equal to the Gross Settlement Fund Fees and Expenses plus the Settlement Awards.  Any amount of the Revised Settlement Fund above the Gross Settlement Fund Fees and Expenses and the Settlement Awards shall remain in Defendants' possession.



FD

_____                                                                                                          _____
Defendants                                                                                                              Dance

4. Attorneys' Fees and Costs Amounts. When the Settling Parties file the Joint Motion, Plaintiff's Counsel will make an application to the Court for an award of $50,250.00 as payment for Plaintiff's attorneys' fees, costs, and expenses of litigation from the Gross Settlement Fund. Defendants will not oppose Plaintiff's attorneys' fees and costs request. The Court's approval of this Agreement, however, is not conditioned upon the Court's approval of Plaintiff's Counsel's petition for fees, costs, and litigation expenses. Any amount Plaintiff's Counsel requests that the Court does not approve for attorneys' fees, costs, and litigation expenses will become part of the Revised Settlement Fund. Payment of Court-approved attorneys' fees, costs, and expenses to Plaintiff's Counsel from the Gross Settlement Fund shall be made in accordance with this Agreement and will constitute full satisfaction of any and all obligations by Defendants to pay any person, attorney, or law firm for any attorneys' fees, costs, or expenses incurred on behalf of Named Plaintiff and/or any Qualified Claimant. The Settlement Claims Administrator will report the payment to Plaintiff's Counsel of these fees, costs, and expenses on an IRS Form 1099.

## C.    Settlement Claims Administration

1. Selection of Settlement Claims Administrator. Defendants have selected JND Legal Administration, with which selection Plaintiff agrees.

2. Settlement Claims Administrator Responsibilities. The Settlement Claims Administrator will be responsible for: (a) preparing (subject to the parties' approval) the estimated calculations of the individualized settlement payments and tax withholding amounts for Named Plaintiff and the Potential Opt-In Plaintiffs, as applicable; (b) preparing, printing and disseminating to the Potential Opt-In Plaintiffs the Notice Packet; (c) copying counsel for all Settling Parties on material correspondence and promptly notifying all counsel for the Settling Parties of any material requests or communications made by any Settling Party or Potential Opt-In Plaintiff who receives Notice; (d) preparing, monitoring, and maintaining a toll-free number with phone answerers until 30 days after the mailing of checks to Qualified Claimants; (e) receiving and reviewing the Consent to Join and Release Forms submitted by Potential Opt-In Plaintiffs to determine eligibility for payment; (f) calculating the final settlement payments for each Qualified Claimant in accordance with this Agreement (subject to the parties' approval); (g) mailing the settlement checks to Qualified Claimants; (h) wiring Plaintiff's Counsel's attorneys' fees, expenses, and costs and mailing settlement payments in accordance with this Agreement and Order of the Court; (i) paying all payroll tax obligations of Defendants in accordance with this Agreement; (j) issuing W-2 and 1099 Forms for all amounts paid to Qualified Claimants and Plaintiff's Counsel, as applicable; (k) ascertaining current address and addressee information for each Notice Packet returned as undeliverable; (l) responding to inquiries of the Potential Opt-In Plaintiffs regarding the terms of settlement and procedures for returning Consent to Join and Release Forms; (m) referring to Plaintiff's Counsel all inquiries about the amount of the estimated settlement payment by Qualified Claimants, if the Settlement Claims Administrator is unable to answer such inquiries; (n) responding to inquiries of Plaintiff's Counsel or Defendants' Counsel; (o) promptly apprising counsel for the Settling Parties of the activities of the Settlement Claims Administrator; (p) maintaining adequate records of its activities, including the date of the mailing of the Notice



Defendants                                                                                              Dance

4.    Attorneys' Fees and Costs Amounts.  When the Settling Parties file the Joint Motion, Plaintiff's Counsel will make an application to the Court for an award of $50,250.00 as payment for Plaintiff's attorneys' fees, costs, and expenses of litigation from the Gross Settlement Fund.  Defendants will not oppose Plaintiff's attorneys' fees and costs request.  The Court's approval of this Agreement, however, is not conditioned upon the Court's approval of Plaintiff's Counsel's petition for fees, costs, and litigation expenses.  Any amount Plaintiff's Counsel requests that the Court does not approve for attorneys' fees, costs, and litigation expenses will become part of the Revised Settlement Fund.  Payment of Court-approved attorneys' fees, costs, and expenses to Plaintiff's Counsel from the Gross Settlement Fund shall be made in accordance with this Agreement and will constitute full satisfaction of any and all obligations by Defendants to pay any person, attorney, or law firm for any attorneys' fees, costs, or expenses incurred on behalf of Named Plaintiff and/or any Qualified Claimant.  The Settlement Claims Administrator will report the payment to Plaintiff's Counsel of these fees, costs, and expenses on an IRS Form 1099.

**C.    Settlement Claims Administration**

1.    Selection of Settlement Claims Administrator.  Defendants have selected JND Legal Administration, with which selection Plaintiff agrees.

2.    Settlement Claims Administrator Responsibilities.  The Settlement Claims Administrator will be responsible for: (a) preparing (subject to the parties' approval) the estimated calculations of the individualized settlement payments and tax withholding amounts for Named Plaintiff and the Potential Opt-In Plaintiffs, as applicable; (b) preparing, printing and disseminating to the Potential Opt-In Plaintiffs the Notice Packet; (c) copying counsel for all Settling Parties on material correspondence and promptly notifying all counsel for the Settling Parties of any material requests or communications made by any Settling Party or Potential Opt-In Plaintiff who receives Notice; (d) preparing, monitoring, and maintaining a toll-free number with phone answerers until 30 days after the mailing of checks to Qualified Claimants; (e) receiving and reviewing the Consent to Join and Release Forms submitted by Potential Opt-In Plaintiffs to determine eligibility for payment; (f) calculating the final settlement payments for each Qualified Claimant in accordance with this Agreement (subject to the parties' approval); (g) mailing the settlement checks to Qualified Claimants; (h) wiring Plaintiff's Counsel's attorneys' fees, expenses, and costs and mailing settlement payments in accordance with this Agreement and Order of the Court; (i) paying all payroll tax obligations of Defendants in accordance with this Agreement; (j) issuing W-2 and 1099 Forms for all amounts paid to Qualified Claimants and Plaintiff's Counsel, as applicable; (k) ascertaining current address and addressee information for each Notice Packet returned as undeliverable; (l) responding to inquiries of the Potential Opt-In Plaintiffs regarding the terms of settlement and procedures for returning Consent to Join and Release Forms; (m) referring to Plaintiff's Counsel all inquiries about the amount of the estimated settlement payment by Qualified Claimants, if the Settlement Claims Administrator is unable to answer such inquiries; (n) responding to inquiries of Plaintiff's Counsel or Defendants' Counsel; (o) promptly apprising counsel for the Settling Parties of the activities of the Settlement Claims Administrator; (p) maintaining adequate records of its activities, including the date of the mailing of the Notice

_____
Defendants

JD
FD
_____
Dance

Packets and receipt of Consent to Join and Release Forms, returned mail and other communications and attempted written or electronic communications with the Potential Opt-In Plaintiffs; (q) confirming in writing to Plaintiff's Counsel and Defendants' Counsel and the Court its completion of the administration of the settlement and retaining copies of all endorsed settlement checks; (r) timely responding to communications from the Settling Parties or their counsel; (s) returning to Defendants any unclaimed/uncashed funds; and (t) such other tasks as the Settling Parties mutually agree.

        **3.** <u>Settlement Fund Fees and Expenses.</u>  All fees, expenses, and costs of the Settlement Claims Administrator related directly or indirectly to the Settlement Fund or the Qualified Settlement Fund (as defined below), including but not limited to, those related to notice, check cutting and mailing, claims processing, court filings, legal and accounting advice relating to the establishment of the Qualified Settlement Fund and tax treatment and tax reporting of awards to Qualified Claimants, preparation of tax returns (and the taxes associated with such tax returns as defined below), will be paid from the Qualified Settlement Fund.

        **4.** <u>Reporting by Settlement Claims Administrator</u>.  Throughout the period of claims administration, the Settlement Claims Administrator will provide such reports to the Settling Parties upon request by either Settling Party, regarding the status of the mailing of the Notice Packets to Potential Opt-In Plaintiffs, the claims administration process, the receipt of Consent to Join and Release Forms, and distribution of the Settlement Checks or any other aspect of the claims administration process.

      **D.**   **<u>Creation and Implementation of a Qualified Settlement Fund</u>**

        **1.** <u>Establishing the Qualified Settlement Fund.</u>  The Gross Settlement Fund will be deposited into an account titled Money/Star Network Defendants Settlement Fund (the "Settlement Fund"), created by the Settlement Claims Administrator and intended by the Settling Parties to be a "Qualified Settlement Fund," as described in Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, *et seq.*  The Settlement Fund will be established as a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, the Treas. Reg. Section 1.468B-1, *et seq.*, and will be administered by the Settlement Claims Administrator, subject to the ultimate authority of the Court.

        **2.** <u>Administering the Settlement Fund</u>.  The Settlement Claims Administrator will serve as Trustee of the Settlement Fund and will act as a fiduciary with respect to the handling, management, and distribution of the Settlement Fund, including the handling of tax-related issues and payments.  The Settlement Claims Administrator will act in a manner necessary to qualify the Settlement Fund as a Qualified Settlement Fund and to maintain that qualification.  The Settling Parties will cooperate to ensure such treatment and will not take a position in any filing or before any tax authority inconsistent with such treatment.  The Settling Parties agree to any relation-back



Defendants                                                    Dance

Packets and receipt of Consent to Join and Release Forms, returned mail and other communications and attempted written or electronic communications with the Potential Opt-In Plaintiffs; (q) confirming in writing to Plaintiff's Counsel and Defendants' Counsel and the Court its completion of the administration of the settlement and retaining copies of all endorsed settlement checks; (r) timely responding to communications from the Settling Parties or their counsel; (s) returning to Defendants any unclaimed/uncashed funds; and (t) such other tasks as the Settling Parties mutually agree.

        **3.**   <u>Settlement Fund Fees and Expenses.</u>   All fees, expenses, and costs of the Settlement Claims Administrator related directly or indirectly to the Settlement Fund or the Qualified Settlement Fund (as defined below), including but not limited to, those related to notice, check cutting and mailing, claims processing, court filings, legal and accounting advice relating to the establishment of the Qualified Settlement Fund and tax treatment and tax reporting of awards to Qualified Claimants, preparation of tax returns (and the taxes associated with such tax returns as defined below), will be paid from the Qualified Settlement Fund.

        **4.**   <u>Reporting by Settlement Claims Administrator.</u>   Throughout the period of claims administration, the Settlement Claims Administrator will provide such reports to the Settling Parties upon request by either Settling Party, regarding the status of the mailing of the Notice Packets to Potential Opt-In Plaintiffs, the claims administration process, the receipt of Consent to Join and Release Forms, and distribution of the Settlement Checks or any other aspect of the claims administration process.

    **D.**     <u>**Creation and Implementation of a Qualified Settlement Fund**</u>

        **1.**   <u>Establishing the Qualified Settlement Fund.</u>   The Gross Settlement Fund will be deposited into an account titled Money/Star Network Defendants Settlement Fund (the "Settlement Fund"), created by the Settlement Claims Administrator and intended by the Settling Parties to be a "Qualified Settlement Fund," as described in Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, *et seq.* The Settlement Fund will be established as a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, the Treas. Reg. Section 1.468B-1, *et seq.*, and will be administered by the Settlement Claims Administrator, subject to the ultimate authority of the Court.

        **2.**   <u>Administering the Settlement Fund.</u>   The Settlement Claims Administrator will serve as Trustee of the Settlement Fund and will act as a fiduciary with respect to the handling, management, and distribution of the Settlement Fund, including the handling of tax-related issues and payments. The Settlement Claims Administrator will act in a manner necessary to qualify the Settlement Fund as a Qualified Settlement Fund and to maintain that qualification. The Settling Parties will cooperate to ensure such treatment and will not take a position in any filing or before any tax authority inconsistent with such treatment. The Settling Parties agree to any relation-back



FD

Dance

<u>       </u>
Defendants

election required to treat the Settlement Fund as a Qualified Settlement Fund from the earliest possible date.

   **3.** <u>Tax Withholding and Reporting</u>.

     **a.** <u>Employment Taxes</u>.  To the extent that certain settlement payments provided to Qualified Claimants are subject to applicable tax withholding and reporting, the Settlement Claims Administrator will be responsible for withholding and timely remitting and reporting to the appropriate taxing authorities the employee's share of payroll taxes or contributions from the wage portion of each Qualified Claimant's settlement payment.  The Settlement Claims Administrator shall also be responsible for withholding and timely remitting and reporting to the appropriate taxing authorities the employer's share of payroll taxes or contributions (*e.g.*, FICA, FUTA, SUTA (as applicable), and Medicare) from the wage portion of the settlement payment paid to each Qualified Claimant.

     **b.** <u>Fund Taxes.</u>  All taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, if any, including any taxes or tax detriments that may be imposed on Defendants with respect to income earned for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal and state income tax purposes ("Settlement Fund Taxes"), and expenses and costs incurred in connection with the operation and implementation of this paragraph (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) any returns described in this Agreement or otherwise required to be filed pursuant to applicable authorities) ("Settlement Fund Tax Expenses") will be paid out of the Settlement Fund.  Further, Settlement Fund Taxes and Settlement Fund Tax Expenses will be treated as a cost of the administration of the Settlement Fund.  The Settling Parties agree to cooperate with the Settlement Claims Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions set forth in this Section.

   **4.** <u>Other Payments and Indemnification</u>.  The Settlement Claims Administrator will satisfy from the Settlement Fund:  all federal, state, local, and other reporting requirements (including any applicable reporting with respect to attorneys' fees and other costs subject to reporting) and any and all taxes, penalties and other obligations with respect to the payments or distributions not otherwise addressed in this Agreement.  The Settlement Claims Administrator shall indemnify the Settling Parties for any penalty or interest arising out of an incorrect calculation or late deposit of the same.

   **5.** <u>Communication with Defendants and Counsel</u>.  Defendants, Defendants' Counsel, and Plaintiff's Counsel are authorized to communicate directly with the Settlement Claims Administrator to expedite the settlement administration process.



Defendants                                 Dance

election required to treat the Settlement Fund as a Qualified Settlement Fund from the earliest possible date.

       3.    <u>Tax Withholding and Reporting</u>.

          a.    <u>Employment Taxes</u>. To the extent that certain settlement payments provided to Qualified Claimants are subject to applicable tax withholding and reporting, the Settlement Claims Administrator will be responsible for withholding and timely remitting and reporting to the appropriate taxing authorities the employee's share of payroll taxes or contributions from the wage portion of each Qualified Claimant's settlement payment. The Settlement Claims Administrator shall also be responsible for withholding and timely remitting and reporting to the appropriate taxing authorities the employer's share of payroll taxes or contributions (*e.g.*, FICA, FUTA, SUTA (as applicable), and Medicare) from the wage portion of the settlement payment paid to each Qualified Claimant.

          b.    <u>Fund Taxes.</u> All taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, if any, including any taxes or tax detriments that may be imposed on Defendants with respect to income earned for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal and state income tax purposes ("Settlement Fund Taxes"), and expenses and costs incurred in connection with the operation and implementation of this paragraph (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) any returns described in this Agreement or otherwise required to be filed pursuant to applicable authorities) ("Settlement Fund Tax Expenses") will be paid out of the Settlement Fund. Further, Settlement Fund Taxes and Settlement Fund Tax Expenses will be treated as a cost of the administration of the Settlement Fund. The Settling Parties agree to cooperate with the Settlement Claims Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions set forth in this Section.

       4.    <u>Other Payments and Indemnification</u>. The Settlement Claims Administrator will satisfy from the Settlement Fund: all federal, state, local, and other reporting requirements (including any applicable reporting with respect to attorneys' fees and other costs subject to reporting) and any and all taxes, penalties and other obligations with respect to the payments or distributions not otherwise addressed in this Agreement. The Settlement Claims Administrator shall indemnify the Settling Parties for any penalty or interest arising out of an incorrect calculation or late deposit of the same.

       5.    <u>Communication with Defendants and Counsel</u>. Defendants, Defendants' Counsel, and Plaintiff's Counsel are authorized to communicate directly with the Settlement Claims Administrator to expedite the settlement administration process.



FD

_____
Defendants

_____
Dance

### E.   Payments from the Qualified Settlement Fund

**1.**   Timing of Payments to Plaintiff's Counsel.  Within 20 days after Defendants fund the Qualified Settlement Fund or 30 days after the Court enters a final order approving Plaintiff's Counsel's attorneys' fees and costs, whichever is later, the Settlement Claims Administrator will pay to Plaintiffs' Counsel, out of the Qualified Settlement Fund, such amount of attorneys' fees, costs, and expenses as has been approved and ordered by the Court up to a maximum amount of $50,250,00.

**2.**   Timing of Payments to Qualified Claimants.  Within 20 days after Defendants fund the Qualified Settlement Fund, the Settlement Claims Administrator will pay to each Qualified Claimant his or her *pro rata* share of the Revised Settlement Fund.  Payment will be sent by first-class U.S. Mail to the last known address for each Qualified Claimant or such other address provided by the Qualified Claimant to the Settlement Claims Administrator.

**3.**   No Additional Benefits or Compensation.  It is expressly understood and agreed that the receipt of any payment under this Agreement will not entitle any Qualified Claimant to any compensation or benefits under any of Defendants' or Released Parties' bonus, incentive, or other compensation or benefit plans or agreements.  Nor will the receipt of such payments entitle any Qualified Claimant to any increased retirement, 401K benefits or matching benefits, or deferred compensation benefits.  The Qualified Claimants are not entitled to any new or additional compensation or benefits as a result of having received payments pursuant to this Agreement (notwithstanding any contrary language or agreement in any benefit or compensation plan document).

**4.**   Tax Treatment.  The Settlement Claims Administrator will allocate 50% of the total paid to each Qualified Claimant to wages (to be reported on an IRS Form W-2) and 50% to liquidated damages (to be reported on an IRS Form 1099).  Payments treated as W-2 wages will be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and other authorized or required deductions (garnishments, tax liens, child support, etc.).  Payments treated as liquidated damages will be made without withholding and reported on an IRS Form 1099.  Payments of attorneys' fees and costs to Plaintiff's Counsel will be made without withholding and reported on an IRS Form 1099.

**5.**   Tax Advice.  Named Plaintiff, on behalf of herself and Potential Opt-in Plaintiffs, acknowledges and agrees that she has not relied upon any advice from Defendants or the attorneys for any party as to the taxability of the payments received pursuant to this Agreement.

**6.**   Negotiation of Settlement Checks.  Qualified Claimants will have 120 days after the date on the settlement checks (the "Check Issuance Date") in which to negotiate the checks. If any Qualified Claimant does not negotiate his or her settlement check within 120 days after the Check Issuance Date, the check will be void, and no such check will be re-issued. Any

Defendants                                                                                                          Dance

E.    **Payments from the Qualified Settlement Fund**

     **1.**    Timing of Payments to Plaintiff's Counsel.  Within 20 days after Defendants fund the Qualified Settlement Fund or 30 days after the Court enters a final order approving Plaintiff's Counsel's attorneys' fees and costs, whichever is later, the Settlement Claims Administrator will pay to Plaintiffs' Counsel, out of the Qualified Settlement Fund, such amount of attorneys' fees, costs, and expenses as has been approved and ordered by the Court up to a maximum amount of $50,250,00.

     **2.**    Timing of Payments to Qualified Claimants.  Within 20 days after Defendants fund the Qualified Settlement Fund, the Settlement Claims Administrator will pay to each Qualified Claimant his or her *pro rata* share of the Revised Settlement Fund.  Payment will be sent by first-class U.S. Mail to the last known address for each Qualified Claimant or such other address provided by the Qualified Claimant to the Settlement Claims Administrator.

     **3.**    No Additional Benefits or Compensation.  It is expressly understood and agreed that the receipt of any payment under this Agreement will not entitle any Qualified Claimant to any compensation or benefits under any of Defendants' or Released Parties' bonus, incentive, or other compensation or benefit plans or agreements.  Nor will the receipt of such payments entitle any Qualified Claimant to any increased retirement, 401K benefits or matching benefits, or deferred compensation benefits.  The Qualified Claimants are not entitled to any new or additional compensation or benefits as a result of having received payments pursuant to this Agreement (notwithstanding any contrary language or agreement in any benefit or compensation plan document).

     **4.**    Tax Treatment.  The Settlement Claims Administrator will allocate 50% of the total paid to each Qualified Claimant to wages (to be reported on an IRS Form W-2) and 50% to liquidated damages (to be reported on an IRS Form 1099).  Payments treated as W-2 wages will be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and other authorized or required deductions (garnishments, tax liens, child support, etc.).  Payments treated as liquidated damages will be made without withholding and reported on an IRS Form 1099.  Payments of attorneys' fees and costs to Plaintiff's Counsel will be made without withholding and reported on an IRS Form 1099.

     **5.**    Tax Advice.  Named Plaintiff, on behalf of herself and Potential Opt-in Plaintiffs, acknowledges and agrees that she has not relied upon any advice from Defendants or the attorneys for any party as to the taxability of the payments received pursuant to this Agreement.

     **6.**    Negotiation of Settlement Checks.  Qualified Claimants will have 120 days after the date on the settlement checks (the "Check Issuance Date") in which to negotiate the checks. If any Qualified Claimant does not negotiate his or her settlement check within 120 days after the Check Issuance Date, the check will be void, and no such check will be re-issued. Any



  FD

Dance

<u>Defendants</u>

settlement check not timely negotiated shall be automatically cancelled after 120 days. Each Qualified Claimant has no right to or interest in any settlement payment unless and until the Qualified Claimant cashes his or her check.

       **7.**   <u>Unclaimed/Unused Funds to Defendants</u>.   Any funds remaining in the Qualified Settlement Fund after payment: (1) to all Qualified Claimants who timely negotiate their settlement checks; (2) of all attorneys' fees, costs, and litigation expenses approved by the Court; (3) of all fees, expenses, and costs incurred by the Settlement Claims Administrator and all costs in connection with the Settlement Fund and Qualified Settlement Fund including, but not limited to, those related to notice, check cutting and mailing, claims processing, court filings, legal and accounting advice relating to the establishment of the Qualified Settlement Fund and tax treatment and tax reporting of awards to Qualified Claimants, preparation of tax returns (and the taxes associated with such tax returns as defined below); and (4) of all applicable federal, state and local payroll taxes and contributions required to be withheld, remitted, or paid by Defendants, excluding Defendants' share of any payroll taxes associated with any portions of the Settlement Awards designated as wages under IRS Form W-2 shall be paid to the National Employment Law Project as a *cy pres* award.

## IV.   <u>RELEASE BY QUALIFIED CLAIMANTS</u>

      Conditioned upon the Court's entry of the Approval Order, and in exchange for the monetary consideration recited in this Agreement, the Named Plaintiff agrees to dismiss the Litigation with prejudice and all Qualified Claimants release Defendants and each and all of their present and former parents, including Fiserv, Inc., subsidiaries, affiliates, related entities, business units, owners, predecessors, successors, shareholders, members, joint ventures, assigns, agents, directors, officers, board members, employees, representatives, insurers, attorneys, trustees, benefit plans, plan fiduciaries, affiliated divisions, and all persons acting by, through, under, or in concert with any of them (collectively, the "Released Parties") from any and all wage and hour claims asserted in the Amended Complaint or that could have been asserted in the Amended Complaint, including claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and any state and/or local wage-and-hour laws, including but not limited to all claims for minimum wage and unpaid regular or overtime wages, all derivative benefit claims (both ERISA and non-ERISA benefits), interest or liquidated damages on such claims, and attorneys' fees and costs related to such claims, through the expiration of the period to appeal court approval of this Agreement as set forth in the Consent to Join and Release Forms.

## V.   <u>NOTICES</u>

      All notices, requests, demands and other communications required or permitted to be given pursuant to this Agreement will be in writing and will be delivered personally or mailed, postage prepaid, by first-class mail to the undersigned persons at their respective addresses set forth below:

```
┌─DS
│ JP
└───────
Defendants
```

                                                   Dance

settlement check not timely negotiated shall be automatically cancelled after 120 days. Each Qualified Claimant has no right to or interest in any settlement payment unless and until the Qualified Claimant cashes his or her check.

7. <u>Unclaimed/Unused Funds to Defendants</u>. Any funds remaining in the Qualified Settlement Fund after payment: (1) to all Qualified Claimants who timely negotiate their settlement checks; (2) of all attorneys' fees, costs, and litigation expenses approved by the Court; (3) of all fees, expenses, and costs incurred by the Settlement Claims Administrator and all costs in connection with the Settlement Fund and Qualified Settlement Fund including, but not limited to, those related to notice, check cutting and mailing, claims processing, court filings, legal and accounting advice relating to the establishment of the Qualified Settlement Fund and tax treatment and tax reporting of awards to Qualified Claimants, preparation of tax returns (and the taxes associated with such tax returns as defined below); and (4) of all applicable federal, state and local payroll taxes and contributions required to be withheld, remitted, or paid by Defendants, excluding Defendants' share of any payroll taxes associated with any portions of the Settlement Awards designated as wages under IRS Form W-2 shall be paid to the National Employment Law Project as a *cy pres* award.

## IV.   **RELEASE BY QUALIFIED CLAIMANTS**

Conditioned upon the Court's entry of the Approval Order, and in exchange for the monetary consideration recited in this Agreement, the Named Plaintiff agrees to dismiss the Litigation with prejudice and all Qualified Claimants release Defendants and each and all of their present and former parents, including Fiserv, Inc., subsidiaries, affiliates, related entities, business units, owners, predecessors, successors, shareholders, members, joint ventures, assigns, agents, directors, officers, board members, employees, representatives, insurers, attorneys, trustees, benefit plans, plan fiduciaries, affiliated divisions, and all persons acting by, through, under, or in concert with any of them (collectively, the "Released Parties") from any and all wage and hour claims asserted in the Amended Complaint or that could have been asserted in the Amended Complaint, including claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and any state and/or local wage-and-hour laws, including but not limited to all claims for minimum wage and unpaid regular or overtime wages, all derivative benefit claims (both ERISA and non-ERISA benefits), interest or liquidated damages on such claims, and attorneys' fees and costs related to such claims, through the expiration of the period to appeal court approval of this Agreement as set forth in the Consent to Join and Release Forms.

## V.   **NOTICES**

All notices, requests, demands and other communications required or permitted to be given pursuant to this Agreement will be in writing and will be delivered personally or mailed, postage prepaid, by first-class mail to the undersigned persons at their respective addresses set forth below:

_____
Defendants

_JD_
ro
_____
Dance

Counsel for Named Plaintiff:

Andrew R. Frisch
Morgan & Morgan, P.A.
8151 Peters Road, Suite 4000
Plantation, FL 33324
Phone: 954-WORKERS
Facsimile: 954-327-3013
afrisch@forthepeople.com

Counsel for Defendants:

Jenna Rinehart Rassif, Esq
Jackson Lewis, P.C.
One Biscayne Tower, Suite 3500
Two South Biscayne Boulevard
Miami, FL  33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466
jenna.rassif@jacksonlewis.com

## VI.  REPRESENTATION BY COUNSEL

All of the Settling Parties acknowledge that they have been represented by counsel throughout all negotiations that preceded the execution of this Agreement and that this Agreement has been executed with the consent and advice of counsel.

## VII.  NO ADMISSION OF LIABILITY

Defendants enter into this Agreement to avoid further expense and disruption to their business.  The Settling Parties acknowledge and agree that liability for the actions that are the subject matter of this Agreement is disputed by Defendants.  This Agreement and the settlement are a compromise and will not be construed as an admission of liability at any time or for any purpose, under any circumstances, by the Settling Parties to this Agreement.  The Settling Parties further acknowledge and agree that this Agreement and the settlement will not be used to suggest an admission of liability in any dispute the Settling Parties may have now or in the future with respect to any person or entity.  Neither this Agreement nor any part of the negotiations had in connection with it, will constitute evidence with respect to any issue or dispute other than for purposes of enforcing this Agreement.

## VIII.  MODIFICATION OF AGREEMENT

This Agreement may not be modified or amended except in writing, signed by the affected Settling Parties or the respective counsel of record for the Settling Parties and as approved by the Court.

Defendants

_____
Dance

Counsel for Named Plaintiff:

Andrew R. Frisch
Morgan & Morgan, P.A.
8151 Peters Road, Suite 4000
Plantation, FL 33324
Phone: 954-WORKERS
Facsimile: 954-327-3013
afrisch@forthepeople.com

Counsel for Defendants:

Jenna Rinehart Rassif, Esq
Jackson Lewis, P.C.
One Biscayne Tower, Suite 3500
Two South Biscayne Boulevard
Miami, FL  33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466
jenna.rassif@jacksonlewis.com

## VI.   REPRESENTATION BY COUNSEL

All of the Settling Parties acknowledge that they have been represented by counsel throughout all negotiations that preceded the execution of this Agreement and that this Agreement has been executed with the consent and advice of counsel.

## VII.   NO ADMISSION OF LIABILITY

Defendants enter into this Agreement to avoid further expense and disruption to their business.  The Settling Parties acknowledge and agree that liability for the actions that are the subject matter of this Agreement is disputed by Defendants.  This Agreement and the settlement are a compromise and will not be construed as an admission of liability at any time or for any purpose, under any circumstances, by the Settling Parties to this Agreement.  The Settling Parties further acknowledge and agree that this Agreement and the settlement will not be used to suggest an admission of liability in any dispute the Settling Parties may have now or in the future with respect to any person or entity.  Neither this Agreement nor any part of the negotiations had in connection with it, will constitute evidence with respect to any issue or dispute other than for purposes of enforcing this Agreement.

## VIII.   MODIFICATION OF AGREEMENT

This Agreement may not be modified or amended except in writing, signed by the affected Settling Parties or the respective counsel of record for the Settling Parties and as approved by the Court.

_____
Defendants

_____
Dance

## IX.    CONSTRUCTION AND INTERPRETATION

**A.    Entire Agreement.** This Agreement constitutes the entire agreement between the Settling Parties with respect to the subject matter contained in this Agreement and will supersede all prior and contemporaneous negotiations between the parties relating to the Litigation and any claim(s) released by this Agreement. This Agreement will be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Agreement or any specific term or condition of this Agreement. Named Plaintiff and Defendants participated in the negotiation and drafting of this Agreement and had available to them the advice and assistance of independent counsel. As such, neither Named Plaintiff nor Defendants may claim that any ambiguity in this Agreement should be construed against the other.

**B.    No Reliance on Representations or Extrinsic Evidence.** Except as expressly provided, this Agreement has not been executed in reliance upon any other oral or written representations or terms, and no such extrinsic oral or written representations or terms will modify, vary or contradict its terms. In entering into this Agreement, the Settling Parties agree that this Agreement is to be construed according to its terms and may not be varied or contradicted by extrinsic evidence.

**C.    Controlling Law.** This Agreement is governed by, construed, enforced and administered in accordance with the laws of the State of Georgia and is subject to the continuing jurisdiction of the United States District Court for the Northern District of Georgia (Atlanta Division).

**D.    No Assignment.** Plaintiff's Counsel and Named Plaintiff represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion or interest , including, but not limited to, any interest in the Litigation, or any related action.

**E.    Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, except the Release and the Consent to Join and Release Forms, the remaining portions of this Agreement will remain in full force and effect to the extent that the effect of the Agreement remains materially the same and the obligations of the Settling Parties remain materially the same.

## X.    COUNTERPARTS

This Agreement, any amendments or modifications to it, and any other documents required or contemplated to be executed in order to consummate this Agreement, may be executed in one or more counterparts, each of which will be deemed an original of this Agreement. All counterparts of any such document together will constitute one and the same instrument. A photocopy or electronic copy of an executed counterpart will be enforceable and admissible as an



Defendants                                    Dance

## IX.   CONSTRUCTION AND INTERPRETATION

**A.   Entire Agreement.** This Agreement constitutes the entire agreement between the Settling Parties with respect to the subject matter contained in this Agreement and will supersede all prior and contemporaneous negotiations between the parties relating to the Litigation and any claim(s) released by this Agreement. This Agreement will be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Agreement or any specific term or condition of this Agreement. Named Plaintiff and Defendants participated in the negotiation and drafting of this Agreement and had available to them the advice and assistance of independent counsel. As such, neither Named Plaintiff nor Defendants may claim that any ambiguity in this Agreement should be construed against the other.

**B.   No Reliance on Representations or Extrinsic Evidence.** Except as expressly provided, this Agreement has not been executed in reliance upon any other oral or written representations or terms, and no such extrinsic oral or written representations or terms will modify, vary or contradict its terms. In entering into this Agreement, the Settling Parties agree that this Agreement is to be construed according to its terms and may not be varied or contradicted by extrinsic evidence.

**C.   Controlling Law.** This Agreement is governed by, construed, enforced and administered in accordance with the laws of the State of Georgia and is subject to the continuing jurisdiction of the United States District Court for the Northern District of Georgia (Atlanta Division).

**D.   No Assignment.** Plaintiff's Counsel and Named Plaintiff represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion or interest , including, but not limited to, any interest in the Litigation, or any related action.

**E.   Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, except the Release and the Consent to Join and Release Forms, the remaining portions of this Agreement will remain in full force and effect to the extent that the effect of the Agreement remains materially the same and the obligations of the Settling Parties remain materially the same.

## X.   COUNTERPARTS

This Agreement, any amendments or modifications to it, and any other documents required or contemplated to be executed in order to consummate this Agreement, may be executed in one or more counterparts, each of which will be deemed an original of this Agreement. All counterparts of any such document together will constitute one and the same instrument. A photocopy or electronic copy of an executed counterpart will be enforceable and admissible as an

_____
Defendants

_____
Dance

original.

## XI.   BINDING EFFECT

This Agreement is binding upon and will inure to the benefit of the Settling Parties to this Agreement. Without limiting the foregoing, this Agreement specifically inures to the benefit of Defendants and each and all of their present and former parents, including Fiserv, Inc., subsidiaries, affiliates, related entities, business units, owners, predecessors, successors, shareholders, members, joint ventures, assigns, agents, directors, officers, board members, employees, representatives, insurers, attorneys, trustees, benefit plans, plan fiduciaries, affiliated divisions, and all persons acting by, through, under, or in concert with any of them. Also, without limiting the foregoing, this Agreement is binding upon the spouses, children, heirs, assigns, administrators, executors, beneficiaries, conservators, successors, and offspring of Named Plaintiff and all Qualified Claimants.

## XII.   ATTORNEY FEES, COSTS AND EXPENSES

Except as otherwise specifically provided in this Agreement, the Settling Parties and all Qualified Claimants will bear responsibility for their own attorneys' fees, costs and expenses, taxable or otherwise, incurred by them or arising out of this Litigation and will not seek reimbursement from any party to this Agreement. However, in the event of any dispute to enforce the terms of this Agreement, the prevailing party will be entitled to an award of her or its reasonable attorneys' fees and costs from the non-prevailing party.

## XIII.   AUTHORITY OF COUNSEL

**A.**   **Email Signatures**. Any Settling Party may execute this Agreement by signing and transmitting the signature page *via* email or regular U.S. Mail to counsel for the other Settling Party. Any signature made and transmitted by email for the purpose of executing this Agreement will be deemed an original signature for purposes of this Agreement and will be binding upon the Settling Party whose counsel transmits the signature page by email.

**B.**   **Voluntary Signature**. All Settling Parties agree that they have signed this Agreement, knowingly, voluntarily, with full knowledge of its significance, and without coercion.

**C.**   **Warranty of Counsel**. Plaintiff's Counsel warrant and represent that they are expressly authorized by the Named Plaintiff to take all appropriate action required or permitted to be taken pursuant to this Agreement in order to effectuate its terms. Counsel for Defendants warrant and represent that they are authorized to take all appropriate action required or permitted to be taken by Defendants pursuant to this Agreement in order to effectuate its terms.



Defendants                                                                                          Dance

original.

## XI.   <u>BINDING EFFECT</u>

This Agreement is binding upon and will inure to the benefit of the Settling Parties to this Agreement.  Without limiting the foregoing, this Agreement specifically inures to the benefit of Defendants and each and all of their present and former parents, including Fiserv, Inc., subsidiaries, affiliates, related entities, business units, owners, predecessors, successors, shareholders, members, joint ventures, assigns, agents, directors, officers, board members, employees, representatives, insurers, attorneys, trustees, benefit plans, plan fiduciaries, affiliated divisions, and all persons acting by, through, under, or in concert with any of them.  Also, without limiting the foregoing, this Agreement is binding upon the spouses, children, heirs, assigns, administrators, executors, beneficiaries, conservators, successors, and offspring of Named Plaintiff and all Qualified Claimants.

## XII.   <u>ATTORNEY FEES, COSTS AND EXPENSES</u>

Except as otherwise specifically provided in this Agreement, the Settling Parties and all Qualified Claimants will bear responsibility for their own attorneys' fees, costs and expenses, taxable or otherwise, incurred by them or arising out of this Litigation and will not seek reimbursement from any party to this Agreement.  However, in the event of any dispute to enforce the terms of this Agreement, the prevailing party will be entitled to an award of her or its reasonable attorneys' fees and costs from the non-prevailing party.

## XIII.   <u>AUTHORITY OF COUNSEL</u>

**A.**   <u>Email Signatures</u>.  Any Settling Party may execute this Agreement by signing and transmitting the signature page *via* email or regular U.S. Mail to counsel for the other Settling Party.  Any signature made and transmitted by email for the purpose of executing this Agreement will be deemed an original signature for purposes of this Agreement and will be binding upon the Settling Party whose counsel transmits the signature page by email.

**B.**   <u>Voluntary Signature</u>.  All Settling Parties agree that they have signed this Agreement, knowingly, voluntarily, with full knowledge of its significance, and without coercion.

**C.**   <u>Warranty of Counsel</u>.  Plaintiff's Counsel warrant and represent that they are expressly authorized by the Named Plaintiff to take all appropriate action required or permitted to be taken pursuant to this Agreement in order to effectuate its terms.  Counsel for Defendants warrant and represent that they are authorized to take all appropriate action required or permitted to be taken by Defendants pursuant to this Agreement in order to effectuate its terms.

_____
Dance

_____
Defendants

DocuSign Envelope ID: 9A23EEDE-4363-429D-859B-4E57B2B5C19B

## XIV.    NO PUBLICITY

The Settling Parties agree, and therefore instruct their Counsel, not to issue any press release related to the settlement or this Agreement, whether in their own marketing materials or to any media outlet or press release publisher.  The Settling Parties and their Counsel will respond to media inquiries only with the acknowledgment that "the matter was amicably resolved."

## XV.    EFFECT OF NON-APPROVAL

If the Agreement is not approved by the Court for any reason in the form submitted by the Settling Parties, then the Settling Parties will attempt to address any concerns raised by the Court and resubmit a revised settlement agreement if possible.  If the Settling Parties cannot agree on a revised settlement agreement or if the Court denies the approval of a revised settlement agreement, this Agreement or the revised settlement agreement and the consent to notice to the collective for settlement purposes will become null and void and have no further force and effect as of the date the Court's order denying approval of the Agreement or revised settlement agreement is entered, and the Settling Parties will be restored without prejudice to their respective positions as if the Agreement and its application for approval had not been made.

**[Remainder of Page Intentionally Left Blank]**

DS
JP
Defendants

Dance

XIV.     <u>NO PUBLICITY</u>

The Settling Parties agree, and therefore instruct their Counsel, not to issue any press release related to the settlement or this Agreement, whether in their own marketing materials or to any media outlet or press release publisher.  The Settling Parties and their Counsel will respond to media inquiries only with the acknowledgment that "the matter was amicably resolved."

XV.     <u>EFFECT OF NON-APPROVAL</u>

If the Agreement is not approved by the Court for any reason in the form submitted by the Settling Parties, then the Settling Parties will attempt to address any concerns raised by the Court and resubmit a revised settlement agreement if possible.  If the Settling Parties cannot agree on a revised settlement agreement or if the Court denies the approval of a revised settlement agreement, this Agreement or the revised settlement agreement and the consent to notice to the collective for settlement purposes will become null and void and have no further force and effect as of the date the Court's order denying approval of the Agreement or revised settlement agreement is entered, and the Settling Parties will be restored without prejudice to their respective positions as if the Agreement and its application for approval had not been made.

**[Remainder of Page Intentionally Left Blank]**

<u>Defendants</u>

<u>Dance</u>

| | |
|---|---|
| **Dated**: March 2, 2021 | **First Data Corporation**<br><br>Signed: _Jill Poole_ ,<br>in his/her capacity as authorized representative of First Data Corporation<br><br>Print Name: Jill Poole<br><br>Title: SVP, Associate General Counsel |
| **Dated**: March 2, 2021 | **Star Networks, Inc.**<br><br>Signed: _Nigel Andre_ ,<br>in his/her capacity as authorized representative of Star Networks, Inc.<br><br>Print Name: Nigel Andre<br><br>Title: SVP Prepaid |
| **Dated**: March 2, 2021 | **Money Network Financial LLC**<br><br>Signed: _Nigel Andre_ ,<br>in his/her capacity as authorized representative of Money Network Financial LLC<br><br>Print Name: Nigel Andre<br><br>Title: SVP Prepaid |
| 3/4/2021<br>**Dated**: March ____, 2021 | **Reviewed and Approved By:**<br><br>By: _JENNA RASSIF_<br>Jenna Rinehart Rassif, Esq.<br>Jackson Lewis P.C.<br>Counsel for Defendants |

| | |
|---|---|
| **Dated**:  March ____, 2021<br><br>Mar 2, 2021 | **Felicia Dance**<br><br>Signed:  _FELICIA DANCE_____,<br><small>FELICIA DANCE (Mar 2, 2021 22:07 EST)</small><br><br>in her individual capacity as Named Plaintiff and as<br>representative for Qualified Claimants |
| **Dated**:  March ____, 2021 | **Reviewed and Approved By**:<br><br>By:  _____<br>      Andrew Frisch, Esq.<br>      Morgan & Morgan, P.A.<br>      Counsel for Named Plaintiff |

4820-2880-8669, v. 1

| | |
|---|---|
| **Dated**:   March ____, 2021 | **Felicia Dance**<br><br>Signed: _____,<br>in her individual capacity as Named Plaintiff and as<br>representative for Qualified Claimants |
| Mar 3, 2021<br>**Dated**:   March ____, 2021 | **Reviewed and Approved By:**<br><br>By: _____<br>Andrew Frisch (Mar 3, 2021 10:24 EST)<br>Andrew Frisch, Esq.<br>Morgan & Morgan, P.A.<br>Counsel for Named Plaintiff |

4820-2880-8669, v. 1